IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-02483-LTB-KLM

OMAR REZAQ,

      Plaintiff,

v.

MICHAEL NALLEY,
RON WILEY,
MICHAEL MUKASEY, and
FEDERAL BUREAU OF PRISONS,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

      This matter is before the Court on **Defendants' Motion to Dismiss Amended**

**Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6)** [Docket No.

37; Filed March 25, 2008] ("Motion to Dismiss").  Plaintiff filed a Response on April 15, 2008

[Docket No. 43], and Defendants filed a Reply on April 30, 2008 [Docket No. 46].

Thereafter, Plaintiff sought leave to supplement his Response to the Motion to Dismiss to

address an issue to which he failed to respond.  Leave was given, and the Supplemental

Response was docketed on August 28, 2008 [Docket No. 55].  Defendants were also given

leave to file a Supplemental Reply, and they did so on September 25, 2008 [Docket No.

56].  The Motion to Dismiss has now been fully briefed.

      Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1.C, the Motion has

been referred to this Court for recommendation.  Having considered the pleadings, the

case file, and being fully advised regarding the issues, the Court recommends that the

Motion to Dismiss be **GRANTED in part and DENIED in part**.

## I. Factual Background

Plaintiff Omar Rezaq filed a federal lawsuit to address his incarceration at the United States Penitentiary, Administrative Maximum Prison in Florence, Colorado ("ADX"). He is serving a life sentence for air piracy. After his conviction, Plaintiff was initially incarcerated at United States Penitentiary Leavenworth, Kansas ("USP Leavenworth") for approximately two months prior to his placement at ADX. *Complaint* [#19] ¶¶ 20-33. Plaintiff has been confined in the general population unit (or "D Unit") at ADX since January 1997. *Id.* ¶¶ 33, 36.

As an inmate in the general population unit at ADX, Plaintiff claims that his freedom is severely limited. *Id.* ¶¶ 38-45. He is confined alone to an 87.5 square foot cell for at least 23 hours per day. He eats his meals alone in his cell, and when he is allowed recreation (usually around 2 hours per week), he must recreate alone. For at least one two-month period, he claims that he was denied outdoor and indoor exercise. When he is transported from his cell, he is handcuffed and shackled. Finally, the location of Plaintiff's cell prevents him from experiencing direct sunlight.

At ADX, in order to move from the general population unit to a less-restrictive housing assignment – i.e., the intermediate unit, the transitional unit, and the pre-transfer unit – an inmate must be enrolled in the Step-Down Unit Program (or "Program"). *Id.* ¶¶ 69-71; *ADX Step-Down Unit Policy* [#37-2].[1] Since his incarceration at ADX in 1997,

---

[1] Plaintiff referred to criteria for enrollment in the Step-Down Unit Program in his complaint. *Complaint* [#19] ¶ 71. Defendants attached the ADX Step-Down Unit Policy referred to in the complaint to their Motion to Dismiss [Docket No. 37-2]. Plaintiff does not dispute the authenticity of this document, and it is central to one of Plaintiff's claims. In addition, the ADX

Plaintiff has not been enrolled in the Step-Down Unit Program and remains incarcerated in the general population unit. Enrollment in the Program is significant because it is the vehicle by which an inmate can later be moved from ADX to a less-restrictive facility. However, transition between the levels of the Program is not automatic, in that an inmate must still satisfy certain criteria to be eligible for different placement. Plaintiff claims that he has been eligible for enrollment in the Program since "completing his first year in the General Population Unit at ADX." *Complaint* [#19] ¶ 69. Plaintiff also claims that he "has remained in such restrictive confinement, in isolation, for over ten years, or over 3,650 days." *Id.* ¶ 36.

Finally, Plaintiff contends that ADX houses a marginally more restrictive unit than the D Unit, which is identified as the "Control Unit." *Id.* ¶¶ 53-59, 66. Although he claims that the conditions imposed on inmates in the Control Unit are similar to those imposed on D Unit inmates, Control Unit inmates are allowed to contest their placement by presenting evidence and calling witnesses at a hearing addressing that placement. *Id.* ¶¶ 63-68. Despite the alleged similarities between the Control Unit and D Unit, Plaintiff alleges that these same due process protections are not afforded to inmates who would like to contest their placement in the D Unit. *Id.* ¶ 64.

Plaintiff, who is represented by counsel, alleges four claims for relief:

Claim I          Defendants Violated Plaintiff's Liberty Interest not to be Subjected to an Atypical and Significant Hardship in Relation to Ordinary Prison

---

Step-Down Unit Policy has been the subject of litigation and is described in public documents as well. *See Ajaj v. United States*, No. 03-cv-01959-MSK-PAC, 2006 WL 3797871, at *5 (D. Colo. Dec. 22, 2006) (unpublished decision) (*"Ajaj II"*).

Life by [(a)] Transferring [Him] to, and [(b)] His] Indefinite Confinement in, ADX [Fifth Amendment].

Claim II       Plaintiff has a Liberty Interest to Participate in a Step-Down Program Since He Has Met All the Criteria for Such Placement [Fifth Amendment].

Claim III      Defendants Acted Arbitrarily and Capriciously and/or Abused Their Discretion by Classifying D Unit at ADX [as] a General Population Unit when It Is a Control Unit [Administrative Procedure Act ("APA")].

Claim IV      Defendants Denied Plaintiff's [sic] Equal Protection of the Law when They Treated Him Differently than [sic] Those Inmates Who Are Similarly Situated and Located in the Control Unit [Fifth Amendment].

Plaintiff seeks declaratory and injunctive relief regarding Defendants' alleged violations of his constitutional rights. *Id.* at 16-17. He also seeks reasonable attorney fees, expenses, and costs. *Id.* at 17. Plaintiff names as Defendants the Federal Bureau of Prisons ("BOP"); Michael Mukasey, U.S. Attorney General; Michael Nalley, Regional Director of the North Central Region of the BOP; and Ron Wiley, Warden of ADX. The individually-named Defendants are sued in their official capacities only. *Id.* ¶ 8.

## II.  The Motion to Dismiss

On March 25, 2008, Defendants filed a Motion to Dismiss. Defendants contend: (1) Claim I(a) (regarding Plaintiff's transfer to ADX in 1997) should be dismissed because it is barred by the applicable statute of limitations; (2) Claim III should be dismissed pursuant to the doctrine of sovereign immunity; and (3) Claims I-IV should be dismissed for Plaintiff's failure to state a claim upon which relief can be granted. *Motion* [#37] at 4-21.

4

In response to Defendants' arguments, Plaintiff contends: (1) as to Claim I(a), the statute of limitations does not bar his claim regarding his 1997 placement at ADX because such placement is a "continuing violation"; (2) as to Claim III, Defendants are not entitled to sovereign immunity; and (3) as to Claims I-IV, Plaintiff has sufficiently stated claims for Fifth Amendment and APA violations. *Response* [#43] at 7-41; *Supplemental Response* [#55] at 2.

In reply, Defendants argue that (1) Plaintiff fails to state a plausible Fifth Amendment due process claim regarding his incarceration at ADX; (2) Plaintiff fails to state a plausible Fifth Amendment due process claim regarding enrollment in the Step-Down Unit Program; (3) the Court lacks jurisdiction over Plaintiff's APA claim; and (4) Plaintiff fails to state a plausible equal protection claim regarding his conditions as compared to the conditions of inmates in the Control Unit. *Reply* [#46] at 3-15. They also reiterate that the statute of limitations bars Plaintiff's claim related to his 1997 transfer to ADX. *Supplemental Reply* [#56] at 2.

## III. Analysis

### A. Standard of Review

Defendants seek dismissal of Claims I(a) and III on the basis of Fed. R. Civ. P. 12(b)(1). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) may take two forms: a facial attack or a factual attack. When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th 1995). When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1) supported by affidavits and other documents, the Courts makes its own factual findings. *Id.* at 1003.

Defendants also seek dismissal of Claims I-IV on the basis of Fed. R. Civ. P. 12(b)(6). A court reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) must construe the allegations in the complaint in the light most favorable to the plaintiff. *See, e.g.*, *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court considers whether the complaint contains allegations that support a plausible legal claim for relief. *Alvarado v. KOP-TV, LLC*, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007); *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1974 (2007) (holding that a complaint must contain "only enough facts to state a claim to relief that is plausible on its face"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964–65 (internal citations omitted). The facts in the complaint must sufficiently support all elements necessary to establish entitlement to relief under the legal theory proposed by the plaintiff. *Lane v. Simon*, 495 F.3d 1182 (10th Cir. 2007).

In support of the Motion to Dismiss, Defendants attached an ADX policy which is referenced in Plaintiff's complaint, is central to one of his claims, and is not otherwise disputed by Plaintiff. *See, e.g.*, *supra* note 1. In addition, Plaintiff attached an exhibit that is a matter of public record [Docket Nos. 43-2]. *See Vibe Techs., LLC v. Suddath*, No. 06-cv-00812-LTB-MEH, 2006 WL 3404811, at *5 n.2 (D. Colo. Nov. 22, 2006) (unpublished opinion) ("This Court may take judicial notice of court documents and matters of public record."). Generally, when matters outside the pleadings are presented, the motion must be converted to one for summary judgment and reviewed under the standard set forth in

6

Fed. R. Civ. P. 56. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215-16 (10th Cir. 2007).

"However, notwithstanding the usual rule . . ., 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* at 1215 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). None of the attached exhibits requires this Court to analyze the Motion to Dismiss using summary judgment standards.

**B.    Claims I & II – (a) Transfer to ADX; (b) Continued Placement at ADX; and (c) the Ability to Step-Down to Less-Restrictive Units and Transfer out of ADX – Fifth Amendment Due Process**

Plaintiff alleges that his incarceration since 1997 in the general population unit at ADX deprives him of a liberty interest. Plaintiff asserts this injury in three, separate claims: (1) that he was deprived of his Fifth Amendment right to due process when he was transferred to ADX (Claim 1(a)); (2) that he is deprived of his Fifth Amendment right to due process by his continued placement at ADX (Claim I(b)); and (3) that he is deprived of his Fifth Amendment right to due process due to the continued denial of his opportunity to step-down to less-restrictive units and eventually transfer out of ADX (Claim II).

### 1.    Claim 1(a) – Transfer to ADX

Plaintiff was transferred to ADX in 1997. As such, Defendants argue that to the extent that Plaintiff asserts an independent claim for relief related solely to his transfer to ADX, such a claim is barred by the statute of limitations. *Motion to Dismiss* [#37] at 4-5; *Supplemental Reply* [#56] at 2. Defendants contend that a six-year statute of limitations applies to this claim such that the time period for Plaintiff to bring a claim related to his transfer to ADX expired in 2003. *See* 5 U.S.C. § 702; 28 U.S.C. § 2401(a); *see also Jordan*

*v. Sosa*, No. 05-cv-01283-PSF-PAC, 2006 WL 3289020, at *11 (D. Colo. Nov. 6, 2006) (unpublished decision). Plaintiff does not disagree that a six-year statute of limitations applies to this claim. Rather, he alleges that his transfer claim is not time barred because of the continuing violation doctrine. *Supplemental Response* [#55] at 2-7.

The expiration of the statute of limitations is an affirmative defense. Once a defendant satisfies his initial burden to show that a claim is untimely, as Defendants have done here, the burden shifts to Plaintiff to establish a later accrual date of the statute of limitations or to show that there is a basis to toll the accrual date. *See Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). Here, Plaintiff contends that the accrual date was not the date of transfer because his injury has been ongoing given the periodic, recurring review of his eligibility to be stepped down to a less-restrictive unit, the most recent of which occurred in May 2007. *Supplemental Response* [#55] at 2. Putting aside that this Court finds that such an alleged injury is adequately addressed by Plaintiff's other due process claims, the Court considers whether to apply the continuing violation doctrine.

The continuing violation doctrine, if it applied, "would permit a plaintiff to challenge incidents that occurred outside of the statute of limitations if the incidents 'are sufficiently related and thereby constitute a continuing pattern' of wrongful conduct." *Fogle v. Pierson*, No. 05-cv-01211-MSK-CBS, 2008 WL 821803, at *5 (D. Colo. Mar. 26, 2008) (unpublished opinion) (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)). The doctrine, which is employed in Title VII litigation, has never been definitively applied in this context. Indeed, courts in this district have recognized that the "Tenth Circuit has not determined whether the continuing violation doctrine should be applied to complaints filed under 42

8

U.S.C. § 1983" and *Bivens*. *Id.* at *4. While there is no clear precedent regarding the doctrine's application to the present case, the Tenth Circuit has conclusively held that the continuing violation doctrine "is simply not applicable" to other civil rights actions brought pursuant to Title 42. *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1514 (10th Cir. 1997) (rejecting the doctrine's application to 42 U.S.C. § 1981 claims).[2] Because the Tenth Circuit has not explicitly authorized the application of the continuing violation doctrine in this context, and I sufficiently doubt its application to Plaintiff's case, I decline Plaintiff's invitation to apply it herein.

Plaintiff's transfer claim is clearly barred by the applicable statute of limitations and to the extent that Plaintiff asserts such transfer as a independent basis for relief, I recommend that his claim be dismissed. However, the Court notes that to the extent that Plaintiff asserts the facts and events surrounding his transfer as a factual basis in support of his other due process claim(s), the Court considers the 1997 events in its forthcoming analysis.

Accordingly, I recommend that Defendants' Motion to Dismiss Claim 1(a) relating to Plaintiffs' transfer to ADX be **granted**.

> **2.     Claims 1(b) & II – Continued Placement at ADX Without the Ability Step-Down to Less-Restrictive Units and Transfer out of**

---

[2] Further, the Tenth Circuit has noted that the purpose of the doctrine is to account for "the need to file administrative charges" in a relatively short time period as is required for Title VII violations. *Thomas*, 11 F.3d at 1513-14. While there is an administrative review component of § 1983 and *Bivens* claims (42 U.S.C. § 1997e), sufficient legal safeguards exist to protect a prisoner's ability to litigate his claims, e.g., certain failures to exhaust may be excused and the filing of a grievance tolls the statute of limitations until the grievance is resolved. *See generally Roberts v. Barreras*, 484 F.3d 1236, 1238 (10th Cir. 2007). As such, extension of the continuing violation doctrine to the present case would not appear to be necessitated by the presence of a mandatory administrative review procedure.

**ADX**

Plaintiff brings separate due process claims alleging that his continued placement at ADX violates a liberty interest (Claim I(b)) and that his inability to step-down and transfer out of ADX violates a liberty interest (Claim II). Despite the varying labels used by Plaintiff, Claims I(b) & II involve the same issues and set of facts. Plaintiff alleges that his current conditions of confinement are an atypical and substantial hardship compared to those experienced by other federal inmates not in the D Unit at ADX. Although Plaintiff attempts to package his claims as independent challenges, the heart of the relief that he seeks for each is the same, i.e., he requests due process and the ability to transfer to less-restrictive units and eventually be placed at another facility. Despite Plaintiff's labels, the Court construes Claims I(b) & II to be a single due process challenge regarding his current conditions of confinement and considers whether he has adequately stated a plausible due process claim regarding the conditions of confinement imposed on him as a result of his ongoing placement at ADX. *See generally Castro v. United States*, 540 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").

A claim relating to a denial of procedural due process must be supported by allegations that Plaintiff (1) was deprived of a liberty or property interest (2) without constitutionally required safeguards. *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972). The Due Process Clause does not automatically confer a liberty interest to be free from confinement conditions imposed when a prisoner is serving a lawful sentence. *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). Rather, a due process right is triggered when a

prisoner suffers an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). A determination of what constitutes an atypical and significant hardship necessarily includes consideration of whether the conditions in question are a dramatic departure from those ordinarily imposed on a person serving a similar sentence. This consideration includes whether the segregation complained of (1) differs significantly from other types of segregation; (2) differs significantly from what it would have been had the prisoner remained in the general prison population; and (3) increases the duration of a prisoner's sentence. *Id.* at 484-87. In *Sandin*, the Supreme Court found that detention in disciplinary segregation for thirty days did not violate a liberty interest. *Id.* at 487.

More recently, the Supreme Court revisited this issue in *Wilkinson v. Austin*, 545 U.S. 209 (2005). Specifically, the Court considered whether prisoners were deprived of a liberty interest by their placement in Ohio's super maximum prison and whether they were provided sufficient process regarding that placement. *Id.* at 213. The Court considered the totality of the conditions at the super maximum prison in determining whether confinement there imposed an atypical and significant hardship. *Id.* at 214-15. The conditions at issue in *Wilkinson* are similar to those complained of here, namely (1) the prohibition of human contact, including conversation between prisoners in neighboring cells; (2) confinement for as many as twenty-four hours per day, with one hour allotted for exercise on certain days, but not every day; and (3) indefinite incarceration at the super maximum prison with limited review regarding the continued propriety of placement there. Also present in *Wilkinson*, but not pled here, was the fact that the lights were left on twenty-four hours a day in each cell and that placement at the super maximum prison disqualified a prisoner for parole. *Id.*

Given the totality of these conditions, the Court found that confinement at the super maximum prison constituted an atypical and significant hardship such that a prisoner's incarceration there was subject to due process protections. *Id.* at 220-24.

The Tenth Circuit has also had occasion to address this issue. *Hill v. Fleming*, 173 Fed. Appx. 664, 668-72 (10th Cir. Apr. 4, 2006) (unpublished decision). In *Hill v. Fleming*, an inmate alleged that his confinement in segregation for 399 days, where he was confined for twenty-three hours a days and denied a myriad of privileges that prisoners in the general population were afforded, deprived him of a liberty interest. *Id.* at 666. While the Tenth Circuit ultimately found that the defendants were entitled to qualified immunity, the Court specifically noted that summary judgment was inappropriate on the issue of whether an inmate at USP Florence had a protected liberty interest in his conditions of confinement given the genuine factual dispute created by the inmate's claims. *Id.* at 668.

By contrast, in *Jordan v. Federal Bureau of Prisons*, 191 Fed. Appx. 639, 653 (10th Cir. 2006) (unpublished decision), the Tenth Circuit agreed with the district court that summary judgment was appropriate on the issue of whether an inmate confined in segregation at ADX and USP Florence for five years pending a murder investigation had a protected liberty interest. The inmate alleged that he was denied access to radio, television, education and recreational programs and medical and psychological services. *Id.* at 644. He also alleged that he was limited to one social call per month and his interaction with other inmates and recreation were strictly curtailed. *Id.* The Tenth Circuit found that given the totality of the circumstances, including that the length of the prisoner's sentence was unaffected, his duration of confinement in segregation was not indefinite but tied to the length of the murder investigation, his segregation did not deviate substantially

from the conditions imposed upon those in the general population, and the prisoner continued to commit disciplinary infractions further contributing to the length of his segregation, the inmate failed to prove that he had a protected liberty interest. *Id.* at 652-53. The Tenth Circuit specifically noted that the conditions complained of were not as onerous as those at issue in *Wilkinson*. *Id.* at 652.

Lastly, the Tenth Circuit addressed whether a hermaphrodite was deprived of a protected liberty interest when she was confined in segregation for the duration of her fourteen-month incarceration. *Estate of DiMarco v. Wyo. Dep't of Corr., Div. of Prisons*, 473 F.3d 1334 (10th Cir. 2007). In addition to a comparison of the prisoner's conditions of confinement with those of the general prison population, the Tenth Circuit also determined that several additional factors should be considered in an analysis related to whether a liberty interest is implicated. Specifically, courts should consider "whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement, as it did in *Wilkinson*; and (4) the placement is indeterminate . . . ." *Id.* at 1342. The Tenth Circuit held that no protected liberty interest was implicated because the prisoner was assigned to segregation for her own protection, she was allowed to be out of her cell for 5 1/2 hours every day, she had access to library, recreational, and religious facilities and other prison programs, the segregation did not lengthen her incarceration, and her assignment was reviewed every ninety days. *Id.* at 1343-44. While the Tenth Circuit also noted that the prisoner was denied interaction with other inmates and her conditions of confinement deviated from those in the general population, the court found that considering the totality of the factors, the prisoner's segregation did not amount

to an atypical or significant hardship. *Id.*

Unpublished precedent from courts of this District is also instructive. In *Thompson v. Winn*, 07-cv-00025-MSK-KLM, 2008 WL 901570, **6-9 (D. Colo. Mar. 31, 2008) (unpublished decision), the district court held that a prisoner's complaint regarding his segregation at USP-Florence for approximately 500 days was not appropriate for resolution on a motion to dismiss. The prisoner claimed that he was assigned to segregation to protect him as a government witness in a murder case. *Id.* at **1-2 His segregation included confinement in his cell for twenty-three hours per day, handcuffing when he left his cell, restricted access to telephone, showers, recreation, the law library and educational programs, and noncontact visits only with family. *Id.* The court specifically noted that the conditions complained of fell "somewhere between those in *Hill*, where there was arguably a liberty interest, and *Jordan*, where there was not." *Id.* at *6. Given that the prisoner was proceeding *pro se*, the district court concluded that he had stated a plausible due process claim at the motion-to-dismiss stage of the proceedings. The court also noted that the "determination of whether there is a protected liberty interest is highly fact dependent and requires consideration of a number of nonexclusive factors, viewed in their totality." *Id.*; *see also Georgacarakos v. Wiley*, 07-cv-01712-MSK-MEH, 2008 WL 4216265, at *15 (D. Colo. Sept. 12, 2008) (unpublished decision) (holding that allegations of conditions which are similar to those in *Wilkinson* sufficiently stated a claim to survive a motion to dismiss).

Considering the first factor enunciated in *DiMarco*, namely whether the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation, Plaintiff argues that he does not fall within the class of inmates that ADX was meant to house. *Complaint* [#19] ¶¶ 46-48, 52 (indicating that ADX is meant to house "inmates who

have demonstrated an inability to function in a less restrictive environment," and "inmates with severe or chronic behavior problems"). Plaintiff alleges that he has maintained a clear conduct record since his initial incarceration, except for a "failure to urinate on command for a drug test upon arrival at ADX on January 3, 1997," and he argues that his placement there does not serve a legitimate purpose. *Id.* ¶¶ 49, 52; *Response* [#43] at 13. Plaintiff also contends that while incarcerated prior to his conviction and following his conviction at USP Leavenworth, Plaintiff did not commit any conduct which would justify his transfer to a facility with more restrictive conditions. *Complaint* [#19] ¶ 32. Defendants counter that Plaintiffs' underlying air piracy conviction and the previous military training he received during his service in the Jordanian army and the Palestinian Liberation Organization justify his placement at ADX. *Motion to Dismiss* [#37] at 9 (citing *Complaint* [#19] ¶¶ 29-30). Given the facts alleged, I find that this factor weighs slightly in favor of Plaintiff. While safety is a legitimate factor in considering where to place an inmate, Plaintiff was not initially placed at ADX following his conviction, and nothing before the Court suggests that Plaintiff was incapable of functioning in a less restrictive environment or that he displayed chronic behavior problems such as to justify his transfer to ADX.

Considering the second factor enunciated in *DiMarco*, namely whether the conditions of placement are extreme, Plaintiff alleges that the conditions at ADX, even those within the general population, impose "very restrictive conditions." *Complaint* [#19] ¶ 7. Moreover, he alleges that the conditions are "at least as extreme as those in *Wilkinson*, and for a substantially longer duration." *Response* [#43] at 14. Defendants counter that the conditions described by Plaintiff are typical of those experienced by every prisoner in the general population at ADX. *Motion to Dismiss* [#37] at 9. While several

Tenth Circuit cases have ultimately concluded that ADX conditions do not implicate the deprivation of a liberty interest after a consideration of all the facts and evidence at issue, *Wilkinson* and at least one case from this district recognize that similar conditions may support an allegation regarding deprivation of a liberty interest. *Compare Jordan*, 191 Fed. Appx. at 652-53, *with Wilkinson*, 545 U.S. at 223-24, *and Thompson*, 2008 WL 901570, at *6. In addition, the *Hill* Court noted that similar factual claims are inappropriate for preliminary resolution. *Hill*, 173 Fed. Appx. at 668. I find that this factor also weighs in favor of Plaintiff.

Considering the third factor enunciated in *DiMarco*, namely whether the placement increases the duration of confinement, Plaintiff asserts that his incarceration at ADX is indefinite, but he does not allege that it increases the length of his sentence. *See Complaint* [#19] ¶ 50. The fact that an inmate's term of confinement may be impacted by his prolonged placement at a particular facility was a key consideration to the Supreme Court in *Wilkinson*. *See Wilkinson*, 545 U.S. at 224. However, as Defendants correctly note, Plaintiff does not allege that his length of confinement may be implicated. *Motion to Dismiss* [#37] at 10. While Plaintiff contends in his Response that his length of incarceration may be impacted, this allegation is not contained in his complaint. *See Response* [#37] at 10.[3] As such, the Court finds that Plaintiff has failed to plead sufficient information to conclude that this factor weighs in his favor.

Finally, considering the fourth factor enunciated in *DiMarco*, namely whether the

---

[3] Generally, the Court should only rely on allegations made in Plaintiff's complaint in addressing whether he has adequately stated a claim. *Smith v. Plati*, 258 F.3d 1167, 1172 n.2 (10th Cir. 2001).

placement is indeterminate, Plaintiff argues that his confinement at ADX is indefinite because his assignment to a new facility depends upon several factors beyond his control, including his enrollment in the Step-Down Unit Program. *Complaint* [#19] ¶¶ 69-81, 96. Defendants counter that incarceration at ADX cannot be considered indefinite because of the existence of the Program and because Plaintiff receives an eligibility review that occurs every six months. *Motion to Dismiss* [#37] at 10.

Considering Plaintiff's position more thoroughly, Plaintiff contends that his enrollment and movement through the Program depends upon several factors, including the judgment of Defendants who, to this point, have refused to enroll Plaintiff despite other ADX officials recommending his enrollment. *Complaint* [#19] ¶¶ 75-77. Plaintiff also contends that Defendants have not provided sufficient details justifying their decisions. The Court notes that Plaintiff has now been incarcerated at ADX for more than ten years and, based on these pleadings, it remains unclear when he will be eligible for enrollment in the Program or for reassignment.[4]

In his complaint, Plaintiff points to the criteria employed by ADX for determining whether an inmate is eligible for enrollment in the Step-Down Unit Program. *Complaint* [#19] ¶¶ 71-73, 78. Those criteria include whether the inmate has successfully completed prison programs; whether he has interacted appropriately with staff; the inmate's overall adjustment to the institution, including his personal hygiene and cell condition; and whether

---

[4] Pursuant to the Step-Down Unit Policy, an inmate must spend a minimum of 12 months at the facility before being considered for enrollment in the Program. Complaint [#19] ¶ 71; ADX *Step-Down Unit Policy* [#37-2] at 4. Plaintiff claims that he has maintained a clear conduct record since his arrival at ADX, other than a minor infraction in 1997, and that he has been eligible for enrollment in the Program since the first opportunity for consideration. *Complaint* [#19] ¶¶ 69, 72.

the factors that led to his placement at ADX have been mitigated. *Id.* Plaintiff claims that considering those criteria, he is has been and is currently eligible for enrollment in the Program. He also alleges that although his status is reviewed every six months,[5] his rejections have all been justified by a failure to sufficiently mitigate the reasons for his placement at ADX (which are presumably based upon the alleged safety risk that he presents given his prior military training and experience). *Id.* ¶¶ 77, 78, 92-94. Plaintiff contends that this review does not provide him with the adequate level of process that is due and does not afford him a reasonable opportunity to mitigate his reasons for placement at ADX or denial of enrollment in the Program.

At least one Court in this District has recognized that indefinite confinement at ADX without a meaningful right to step down may in itself constitute the deprivation of a liberty interest. *See Ajaj v. United States*, No. 03-cv-01959-MSK-PAC, 2006 1305198, at *10 (D. Colo. May 11, 2006) (unpublished decision) (*"Ajaj I"*); *Ajaj II*, 2006 WL 3797871, at *10. To the extent that Plaintiff contends that his denial of enrollment in the Program has to do with his underlying crime or background, two considerations which were also at issue in the *Ajaj* cases, "this Court is left with concerns that his liberty interest has been compromised, indefinitely, based on circumstances he can neither change nor mitigate." *See Ajaj II*, 2006 WL 3797871, at *10 n.15. Here, considering the fact that Plaintiff has not been enrolled in the Program – despite his alleged eligibility for enrollment for at least the past nine years

---

[5] According to the complaint, the six-month review consists of the inmate receiving a statement from prison officials indicating whether he has qualified for the Step-Down Unit Program. It does not consist of notice and an opportunity for a hearing in advance of the decision or sufficient detail about the reasons for Plaintiff's denial of enrollment in the Program. *See Complaint* [#19] ¶¶ 74-81, 92, 95.

– the Court is persuaded that the indeterminate nature of Plaintiff's confinement at ADX is at issue, such that this factor weighs in favor of Plaintiff.

As in *Sandin* and *DiMarco*, the Court also considers whether the conditions complained of in Plaintiff's complaint differ from those experienced by others. While it appears that the conditions complained of by Plaintiff are typical of those imposed on other inmates in the general population unit at ADX, the complaint implicitly suggests that such conditions are atypical of those experienced by prisoners at other facilities, particularly given the allegation that general population unit inmates at ADX are not allowed to have employment, eat in a mess hall with each other, be out of their cell for twelve hours per day, and have access to outdoor recreation for four hours per day. *Complaint* [#19] at 51. Although there may be nothing unique about the conditions endured by prisoners housed in the general population unit at ADX in comparison with each other, the Court finds that this factor slightly weighs in Plaintiff's favor.

Therefore, inasmuch as Plaintiff's complaint can be interpreted to challenge his ongoing placement in the D Unit at ADX, including his ongoing denial of the ability to step down to less-restrictive units or transfer to another facility, Plaintiff has sufficiently alleged the deprivation of a liberty interest considering the totality of the conditions alleged in light of those asserted in *Wilkinson*, *Hill*, and *Thompson*.

Implication of a liberty interest is the threshold consideration regarding whether Plaintiff's due process claim can go forward. Plaintiff must also sufficiently allege that he failed to receive the appropriate level of process regarding his ongoing placement at ADX. *Wilkinson*, 545 U.S. at 224. Here, Plaintiff alleges that he was not afforded notice or an opportunity to be heard prior to his placement at ADX. *Complaint* [#19] ¶ 34. In addition,

he claims that he continues to be denied adequate process in relation to his continued incarceration at ADX. *Id.* ¶¶ 35, 64, 78-81, 98.

Defendants argue that the availability of the administrative grievance process adequately satisfies any obligation they have to provide Plaintiff with due process concerning his ongoing placement at ADX. *Motion to Dismiss* [#37] at 11-13. As to Defendants' contention, while Plaintiff does not address whether the administrative grievance process is sufficient, he claims that any process provided to him has been inadequate considering that he has not been fully informed of the reasons for his placement at ADX or the ways that he can mitigate those reasons, and has not been able to participate in his reviews for enrollment in the Step-Down Unit Program. *Complaint* [#19] ¶ 34, 35, 78-81; *Response* [#43] at 18-20. Further, Plaintiff claims that the failure to provide him adequate detail regarding the reasons for his placement or denial of enrollment in the Program deprives him of a meaningful opportunity to rebut those decisions. *Response* [#43] at 19.

The requirements of due process are "flexible and cal[l] for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To determine what level of process is due, the Court considers three factors:

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burden that the additional or substitute procedural requirements would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Moreover, "[p]risoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which

they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all."  *Wilkinson*, 545 U.S. at 225.

In *Wilkinson*, the Supreme Court found that prisoners had a liberty interest not to be placed in the State of Ohio's super maximum prison without sufficient preliminary and ongoing safeguards.  *Id.* at 225-30.  Those safeguards included notice of the factual basis for their assignment to the super maximum facility and an opportunity for rebuttal.  The Court was also persuaded that adequate process was provided given that the decision passed through multiple levels of review prior to becoming final, and upon placement in the state super maximum facility, the placement was reviewed again within thirty days, and then annually thereafter.  Instructive to this Court is the fact that the notice and multi-level review safeguards discussed in *Wilkinson* were specific to the issues of placement and continued confinement at the super maximum facility, and do not appear to be related to the standard administrative grievance process most prison facilities provide for ordinary disputes regarding conditions of confinement.  Indeed, the procedures found to be constitutionally adequate in *Wilkinson* appear to have been separate and apart from the normal administrative grievance process.  *See Wilkinson*, 545 U.S. at 227.

Here, the "private interest" that is implicated is the deprivation of Plaintiff's constitutional liberty interests, specifically his interest in avoiding ongoing placement at ADX.  While Plaintiff's interests are necessarily curtailed due to his incarceration generally, such interests are not left at the jailhouse door and forever surrendered.  *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  As in *Wilkinson*, the Court finds that Plaintiff has plausibly alleged that he has a liberty interest in avoiding indefinite placement at ADX.

Regarding the risk of an erroneous deprivation of Plaintiffs' "private interest," there

is no dispute that Plaintiff was not provided notice and a hearing prior to his placement at ADX. While Plaintiff indicates that his eligibility for enrollment in the Step-Down Unit Program is reviewed on a bi-annual basis, this review is only one step in a multi-step process which ultimately allows a prisoner to be moved out of ADX. Moreover, given that Plaintiff has been denied enrollment in the Program for nearly a decade due to a "failure to mitigate," see *Complaint* [#19] ¶ 92, it is important to note that Defendants' alleged failure to provide a sufficient factual basis for Plaintiff's placement at ADX or the ways that he could mitigate the reasons for his placement there made these later bi-annual determinations largely uninformative. *See Ajaj II*, 2006 WL 3797871, at *10 (noting that because ADX inmate was never given reason for incarceration at ADX, denial of admission to step down for failure to mitigate "gives him notice of nothing and therefore deprives him of any meaningful opportunity either to object to, or to appeal from, the denial of step down"). Therefore, I find that the risk of the erroneous deprivation of a liberty interest is high. Further, I find that utilizing certain procedural safeguards, such as providing a prisoner with a sufficient factual basis for his placement, as well as providing him with additional detail regarding how he can mitigate his reasons for placement and become eligible for enrollment in the Program, would mitigate the risk of erroneous deprivation.

Finally, regarding the government's interest, it cannot be denied that the government has a significant interest in managing its prison facilities and maintaining order among its personnel and inmates. *See Wilkinson*, 545 U.S. at 227. While there is some indication that Plaintiff was placed at ADX because he is a security risk, the validity of such a justification in relation to this Plaintiff's ongoing placement has not been sufficiently detailed. As such, at present, this factor is outweighed by the private interest involved and

the risk of erroneous deprivation of that interest.

Accepting all of Plaintiff's allegations as true and construing them in the light most favorable to him, as required, I find it conceivable that Plaintiff could prove that he has a protected liberty interest in avoiding continued placement in the D Unit at ADX without the ability to be transferred to less-restrictive units or to another facility. I also find that Plaintiff has sufficiently pled denial of adequate process given Defendants' failure to inform him of the circumstances behind his ongoing placement in the D Unit at ADX or to provide him with a meaningful opportunity to refute or mitigate those circumstances in relation to Defendants' review of his eligibility for the Step-Down Unit Program.

Accordingly, I recommend that Defendants' Motion to Dismiss relating to Plaintiff's ongoing placement in the D Unit at ADX and his current conditions of confinement be **denied**.

### C.      Claim III – Classification of D Unit as a General Population Unit – APA

Plaintiff contends that Defendants violated the APA by classifying D Unit as a general population unit. *Complaint* [#19] ¶ 104. Specifically, Plaintiff argues that D Unit is, in essence, a Control Unit. By federal regulation, before inmates may be placed in a Control Unit, certain prerequisites must exist and certain process must be provided to the inmate. 28 C.F.R. §§ 541.40-.50 (2007). Plaintiff argues that Defendants' arbitrary classification of D Unit as a general population unit frustrates the regulatory requirements. Putting aside the merits of such a claim, I find that Defendants are entitled to sovereign immunity in relation to Plaintiff's allegations.

While most agency actions are reviewable pursuant to the APA, there are two

notable exceptions. "The notable two exceptions, found in 5 U.S.C. § 701(a)(1) and (2) , are for situations in which judicial review is expressly precluded by statute or the agency action is committed to agency discretion by law." *Payton v. United States Dep't of Agric.*, 337 F.3d 1163, 1167-68 (10th Cir. 2003). The exception implicated here is the latter, namely whether the agency action is committed to agency discretion by law. This exception applies when "the "statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

The statute which gives the BOP the authority to house and classify prisoners allows the BOP to develop

> an integrated system which will assure the proper classification and segregation of Federal prisoners according to the nature of the offenses committed, the character and mental conditions of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to such institutions.

18 U.S.C. § 4081.[6] Considering this language, facility classifications are clearly committed to the discretion of the BOP, and this Court has no meaningful standard upon which to judge the appropriateness of those decisions. *See Heckler*, 470 U.S. at 830. Although Plaintiff suggests that terms such as "proper" and "individualized" contained in § 4081 provide a reasonable benchmark for a court to review whether the BOP made reasonable classifications, I disagree. These undefined terms do not provide sufficient guidelines for

---

[6] Defendant contends that § 4081 is the relevant statute to this discussion. *Motion to Dismiss* [#37] at 19-20 & n.8. Although Plaintiff cites other statutes in his complaint which allegedly provide the BOP with authority to classify inmates, he appears to concede in his Response that § 4081 is the operative statute. *Response* [#43] at 26-29.

a court to determine whether the BOP's actions were in compliance with the legislative intent of the statute. *See id.* at 832-33.

The Second Circuit has considered the authority conferred by § 4081 and noted that this, and a related statute "vest . . . broad unreviewable discretion in the Attorney General." *Wolfish v. Levi*, 573 F.2d 118, 125 & n.13 (2d Cir. 1978). While *Wolfish* was later overruled on other grounds, *Bell v. Wolfish*, 441 U.S. 520 (1979), this portion of the Second Circuit's holding has not been overturned. *See Response* [#43] at 27. Further, the Supreme Court has recognized that "Congress has given federal prison officials full discretion" pursuant to § 4081 and there is "no legitimate statutory" basis for a prisoner to challenge classifications derived from such discretion. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *see also Marchesani v. McCune*, 531 F.2d 459, 461 (10th Cir. 1967) (noting that "the classification of prisoners rests within the sound discretion of the Attorney General").

Accordingly, I recommend that Defendants' Motion to Dismiss Claim III on the basis of sovereign immunity be **granted**.

D. **Claim IV – Comparison of Plaintiff's Conditions of Confinement with Those Imposed on Inmates in the Control Unit – Fifth Amendment Equal Protection**

Plaintiff contends that he is similarly situated to inmates incarcerated in the Control Unit at ADX, and that he is arbitrarily treated differently and not afforded the same level of protections or benefits. *Complaint* [#19] ¶ 113. Defendants contend that Plaintiff does not state a plausible equal protection claim given the facts alleged. *Motion to Dismiss* [#37] at 16-17.

The Equal Protection Clause of the Fifth Amendment prohibits the government from

treating similarly situated individuals differently.  *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  In order for Plaintiff to state an equal protection claim, he must allege that Defendants either denied him a fundamental right or provided differential treatment based on a suspect classification.  *See, e.g.*, *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995).  If the Plaintiff is not a member of a protected class and does not assert a fundamental right, the Court must only determine whether the alleged discriminatory action has a rational basis.  *Id.*; *see also Gwinn v. Awmiller*, 354 F.3d 1211, 1228 (10th Cir. 2004) (holding that "absent an allegation of a suspect classification, our review of prison officials' differing treatment of various inmates is quite deferential" and considering only whether the treatment was "reasonably related to a legitimate penological purpose").

As a preliminary matter, Plaintiff does not argue that he was deprived of a fundamental right.  Therefore, to avoid a deferential consideration of whether Defendants' alleged discriminatory conduct was merely rational, Plaintiff must allege that he is a member of a protected class.  However, the Court notes that facility classifications, on their own, do not create a protected class within the meaning of the Equal Protection Clause, and Plaintiff's complaint cannot be interpreted to allege membership in any other protected class.  *See generally Heller v. Doe by Doe*, 509 U.S. 312, 319-20 (1993).  Therefore, because Plaintiff is not a member of a protected class and because no deprivation of a fundamental right is alleged, Defendants need only have a rational basis for their alleged discriminatory actions.  *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006).  To this end, Plaintiff must show both "that he [is] 'similarly situated'" to those he seeks to be compared with and "that the difference in treatment [is] not 'reasonably related to legitimate

penological interests.'" *Id.* (citation omitted).

Defendants argue that Plaintiff has failed to plausibly allege that he is similarly situated to inmates in the Control Unit. *Motion to Dismiss* [#37] at 16-17. Plaintiff's conclusory attempt to argue that he is similarly situated to all prisoners in a different unit has been addressed and rejected by the Tenth Circuit because a prisoner's "claim that there are no relevant differences between him and other inmates that reasonably might account for their different treatment is not plausible or arguable." *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994). While Plaintiff alleges in his complaint that Plaintiff is similarly situated to inmates in the Control Unit, he fails to plausibly articulate how it could be "that there are other inmates who are similar in every relevant respect" or address the likelihood that a facility might "classify inmates differently because of slight differences in their histories." *Id.* The plausibility of Plaintiff's position is further challenged by an argument he advances in his Response. Specifically, Plaintiff contradicts that he is similarly situated to Control Unit inmates because he notes that Plaintiff has not committed any misconduct that would justify his placement in the Control Unit. *Response* [#43] at 32. In any event, the Court agrees with Defendants that "[e]ven if Plaintiff did qualify for placement in the Control Unit, this allegation would not make Plaintiff similarly situated to all Control Unit inmates." *Reply* [#46] at 13. On this basis alone, the Court recommends that Plaintiff's equal protection claim be dismissed. Similar claims have been found to be "indisputably meritless" and "clearly baseless." *Fogle*, 435 F.3d at 1261, 1263; *Templeman*, 16 F.3d at 371. Therefore, it is unnecessary to consider whether Plaintiff has also plausibly alleged that Defendants lack a rational basis for their differential treatment.

Accordingly, I recommend that Defendants' Motion to Dismiss Claim IV based on

Plaintiff's failure to state a sufficient equal protection claim be **granted**.

## IV. Conclusion

For the reasons stated above, the Court RECOMMENDS that Defendants' Motion to Dismiss [#37] be **GRANTED in part and DENIED in part**.

The Court summarizes its Recommendation as follows:

(1) The Court recommends that Claims I(b) & II be construed as a single due process claim relating to Plaintiff's ongoing placement in the D Unit at ADX and his current conditions of confinement and that such claim go forward; and

(2) The Court recommends that Claims I(a), III & IV of Plaintiff's complaint be **dismissed**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: November 13, 2008

BY THE COURT:

 s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix