IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02483-LTB-KLM

OMAR REZAQ,

    Plaintiff,

v.

MICHAEL NALLEY,
RON WILEY,
MICHAEL MUKASEY, and
FEDERAL BUREAU OF PRISONS,

    Defendants.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Plaintiff's Motion to Compel Discovery** [Docket No. 100; Filed November 24, 2009] (the "Motion"). Defendants responded [Docket No. 105; Filed December 14, 2009], Plaintiff has replied [Docket No. 115; Filed December 28, 2009], and this matter is now ripe for resolution. For the reasons set forth below, the Motion is **DENIED**.

**I.    Factual and Procedural Background**

Plaintiff Omar Rezaq filed a federal lawsuit to address his incarceration at the United States Penitentiary, Administrative Maximum Prison in Florence, Colorado ("ADX"). He is serving a life sentence for air piracy. Plaintiff has been confined in the general population unit (or "D Unit") at ADX since January 1997. *See* Amended Complaint, Docket No. 19, ¶¶ 33, 36.

Plaintiff brought this action alleging a variety of constitutional violations and seeking declaratory and injunctive relief. *Id.* at 16-17. He also seeks reasonable attorney fees,

expenses, and costs. *Id.* at 17.  His Amended Complaint asserts four claims for relief. *Id.* ¶¶ 84-114.  After briefing on Defendants' Motion to Dismiss [Docket No. 37], the Court found that Plaintiff successfully stated a single procedural due process claim. *See* Order, Docket No. 58.  Specifically, the Court found that Plaintiff sufficiently alleged deprivation of a protected liberty interest regarding his ongoing placement in the D unit at ADX and his current conditions of confinement there. *See id.*

## II.     Discovery at Issue

In the instant Motion, Plaintiff requests that the Court compel Defendants to provide responses to his Interrogatories 6, 7, and 9:

Interrogatory 6:
[Identify] all military veterans or other prisoners incarcerated by the BOP, whom the BOP has reason to believe have had military, combat, or weapons training, and indicate the location(s), security classification(s), and custody classification(s) of each such prisoner during the period of his or her incarceration by the BOP.

Interrogatory 7:
[Identify] every prisoner who has ever been incarcerated by the BOP as a result of a conviction for the crime of "Air Piracy," as defined by 49 U.S.C. § 1472(n), 49 U.S.C. 46502(b), or any other versions of the same, and indicate the location(s), security classification(s), and custody classification(s) of each such prisoner during the period of his or her incarceration by the BOP.

Interrogatory 9:
[Identify] every prisoner who has belonged to or was ever believed to belong to any defunct or currently active Palestinian militant organization including, but not limited to, the Palestinian Liberation Organization (PLO), the Palestinian Liberation Army (PLA), Black September, Hamas, Abu Nidal Organization (a/k/a Fatah – the Revolutionary Counsel), Popular Liberation Front (PLF), Popular Front for the Liberation of Palestine (PFLP), and any other Palestinian organization designated a "Foreign Terrorist Organization" by the U.S. State Department and/or pursuant to Section 219 of the Immigration and Naturalization Act. In your answer, indicate the crime(s) each such prisoner was convicted of, the eventual disposition of each such prisoner, e.g. paroled, released, deceased, still incarcerated, and the location(s), security classification(s), and custody classification(s) of each such prisoner during the period of his or her incarceration by the BOP.

The parties attempted to refine and clarify the interrogatories so as to avoid discovery disputes. *See* Docket Nos. 100-7 to 100-18. The parties now agree that the interrogatories currently at issue have been clarified thus:

> [Provide] a redacted list [*i.e.,* names redacted] of all individuals in each of the Security Threat Groups and management interest groups that Plaintiff is a part of, excluding only the Posted Picture file group, displaying the location, instant offense, year of conviction, security classification and custody classification of each member of these groups.

*See Motion* [#100] at 9; *Response* [#105] at 4.[1] In the instant Motion, Plaintiff seeks responses to his Interrogatories 6, 7, and 9, as clarified by the language reproduced above.

**III.   Analysis**

Defendants object to providing the discovery requested, arguing that it is irrelevant and overly broad.

Federal Rule of Civil Procedure 26(b) permits discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party" and discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1); *see also Williams v. Bd. of County Comm'rs*, 192 F.R.D. 698, 702 (D.Kan. 2000) (citations omitted) (noting that "request for discovery should be considered relevant if there is 'any possibility' the information sought may be relevant to the subject matter of the action"). Considering that "[l]imitations on the discovery process necessarily conflict with the 'fundamental principle that the public . . . has a right to every

---

[1] Although the parties agree that this is the substance of the discovery request at issue in the instant Motion, Defendants protest that this request as presently framed by Plaintiff is a new request. *Response* [#105] at 4-9. Defendants do not pose this objection as a legal argument against compelling discovery. Pursuant to Fed.R.Civ.P.37(a)(1), Plaintiff had an obligation to confer with Defendants to attempt to resolve any discovery disputes without court action. It is clear from the correspondence provided by Plaintiff as attachments to his Motion [Docket Nos. 100-7 to 100-18] that the request Defendants characterize as "new" represents Plaintiff's attempt to refine and narrow his original requests in order to articulate a request which might be acceptable to Defendants.

man's evidence,' " the Federal Rules broadly define the scope of discovery. *Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 356 (D.Colo. 2004) (citing *Trammel v. United States*, 445 U.S. 40, 50 (1980)).  The Court may, however, forbid the disclosure or discovery, specify terms for the disclosure or discovery, forbid inquiry into certain matters, or limit the scope of disclosure or discovery to certain matters to protect a party from undue burden and expense. *See* Fed.R Civ.P. 26(c)(1).  As a threshold matter, however, the Court must consider whether the discovery sought is relevant to the subject matter of the litigation.

"When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson*, 220 F.R.D. at 359 (citations omitted); *see also Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 685 (D.Kan. 1991) (stating that a party resisting discovery based on relevancy grounds bears the burden of explaining how "each discovery request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or burdensome"). However, when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.  *See Paradigm Alliance, Inc. v. Celeritas Tech., LLC*, No. 07-1121-MLB, 2008 WL 678700, at *2 (D.Kan. March 7, 2008) (citation omitted); *Williams*, 192 F.R.D. at 705 (noting that when relevancy of propounded request not apparent, proponent has burden of establishing it).

Here, Defendants contend that the request is not relevant on its face.  Although the initial relevance threshold is low, the Court agrees with Defendants.  *See Heartland*

4

*Surgical Specialty Hosp., LLC v. Midwest Division, Inc.*, No. 05-2164-MLB-DWB, 2007 WL 950282, at *1 (D. Kan. March 26, 2007) (citation omitted) (noting that the initial burden of showing relevance is a "low burden" but finding request for information from before key date in plaintiff's antitrust claim not relevant on its face); *see also P.S. ex rel. Nelson v. Farm, Inc.*, No. 07-CV-2210-JWL, 2009 WL 939123, at *5 (D. Kan. April 6, 2009) (finding request for files of other foster children previously placed in plaintiff foster child's home not relevant on its face to plaintiff's claim of negligence). Plaintiff therefore has the burden of establishing that the information requested is relevant to his procedural due process claim.

In order to establish a claim for relief due to lack of procedural due process, Plaintiff must prove that he has a protected liberty interest and that in depriving him of that liberty interest, Defendants did not afford Plaintiff constitutionally adequate process. *See, e.g.*, *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) (citation omitted). The Supreme Court has held that, for prisoners, a liberty right exists only where interference with that right would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Plaintiff argues that the information requested is relevant because it goes to show that in placing Plaintiff in the D Unit at ADX, Defendants have deprived him of a liberty interest.

"[A] protected liberty interest may arise from prison placement decisions and conditions of confinement." *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1340 (10th Cir. 2007); *see Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (finding plaintiff inmates had protected liberty interest in avoiding assignment to maximum security prison). The Supreme Court has "emphasized that the touchstone of the due process inquiry" is "the nature of those conditions themselves in relation to the ordinary incidents of prison life." *DiMarco,* 473 F.3d at 1340 (quoting *Wilkinson*, 545 U.S. at 221, 223)

(internal quotations omitted). The discovery requested may be relevant if it will assist the Court in assessing whether Plaintiff's conditions of confinement are of such a nature as to create a protected liberty interest.

In *Di Marco*, the Tenth Circuit Court of Appeals provided guidance as to what information is relevant to a determination of whether a plaintiff has a protected liberty interest. The *DiMarco* court considered "several possible solutions" to what it framed as "the baseline comparison question." 473 F.3d at 1341. The court ultimately determined that "it makes sense to look at a few key factors, none dispositive" and identified "relevant factors" as:

> whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . . ; and (4) the placement is indeterminate . . . .

*Id.* at 1342; *see Stine v. Lapin*, No. 07-cv-01839-WYD-KLM, 2009 WL 10365, at *8 (D. Colo. Jan. 14, 2009) (noting that in *DiMarco*, Tenth Circuit determined that "in addition to a comparison of the prisoner's conditions of confinement with those of the general population," these four factors should be considered "in an analysis related to whether a liberty interest is implicated").

Plaintiff asserts that the discovery he seeks will show that other prisoners who BOP places in the same Security Threat Group ("STG") or designates for special population management are being housed in facilities other than ADX. Plaintiff contends that this information relates to the first factor articulated above and has the potential to demonstrate that Defendants' decision to house Plaintiff in ADX does not serve a legitimate penological interest. Plaintiff also argues that the information will generally show that his conditions of confinement are worse than those experienced by his counterparts.

There are several problems with Plaintiff's contentions. First, Plaintiff fails to explain how the *precise* information sought in the clarified interrogatory – that is, the location, offense, year of conviction, security classification and custody classification of prisoners in the same STGs and management interest groups as Plaintiff – will lead to the discovery of admissible evidence about the "atypical and significant hardship" on Plaintiff arising from his current incarceration at ADX. Although the information sought by Plaintiff could generate an anonymous list of prisoners with similar BOP classifications who are incarcerated elsewhere, such a list proves nothing about Plaintiff's alleged extreme conditions of confinement. Second, Plaintiff apparently *assumes* that disclosure of the requested list will somehow demonstrate that his placement at ADX and conditions of confinement are extreme when compared to other similarly-classified prisoners. Yet this assumption is entirely unfounded. The relevant inquiry here is related to the *conditions of confinement* of similarly-classified prisoners, not their location, offense or year of conviction. Third, Plaintiff has made no argument to suggest that the list will be used to identify comparators about whom Plaintiff will then seek relevant information relating to their conditions of confinement. The list itself, without such further inquiry, is meaningless to Plaintiff's sole remaining due process claim.

Accordingly, the Court finds that the discovery Plaintiff requests is not relevant because it does not have the potential to demonstrate that the conditions under which Plaintiff lives are "atypical" and a "significant hardship." Although relevancy is broadly construed, and a request for discovery should be considered if there is a possibility that the information sought may be relevant to the claim or defense of any party, *see, e.g.*, *Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005) (citations omitted), here the court sees no such possibility. Information regarding the placement of

7

prisoners with the same STG designation as Plaintiff will not illuminate whether Plaintiff's placement and conditions of confinement are warranted by safety and security concerns, as it will tell the Court nothing about the conditions of similarly-designated prisoners' confinements. Notably, Plaintiff does not argue that a prisoner's placement or location is itself rich data which would automatically communicate information about the conditions of confinement experienced by a prisoner.

Furthermore, even if the placement itself were so communicative, Plaintiff has not established that prisoners' STG designations are determinative of their placement. That is, he has not established that the conditions of confinement under which similarly- labeled prisoners live are directly related to their STG designations. In fact, evidence presented by Defendants shows that BOP's "STG designations have no relationship to an inmate's security and custody classification, or housing assignment" and are instead "used to monitor an inmate's communications." *Response* [#105] at 15 (citing Deposition of Lee Smith, Chief of BOP's Counter Terrorism Unit, Docket No. 108, Exhibit A-2, at 45 (filed under seal)). Plaintiff relies on the fact that the reasons provided by Defendants for his placement are similar to the reasons why he has been assigned a particular security threat group designation. *Reply* [#115] at 8. Plaintiff's sample of one, in the face of the expert testimony of Lee Smith, is not persuasive. Thus, even assuming, *arguendo,* that identifying the institution where a prisoner is housed would serve to establish his conditions of confinement, the link Plaintiff seeks to establish between security group designation and placement is too attenuated and unsubstantiated to render the requested information discoverable.

Plaintiff does not provide, and the Court has not located, any case in this Circuit or another in which the court has considered the location, offense, year of conviction, security

classification, and custody classification of prisoners with the same security threat group designations to be relevant to determining whether conditions experienced by the plaintiff are "atypical" and represent a "significant hardship." Because Plaintiff has not met his burden in establishing the relevancy of the requested discovery, the Motion is **denied**. *Cf. P.S. ex rel. Nelson*, 2009 WL 939123, at *5 (finding request for files of other foster children previously placed in plaintiff foster child's home not relevant on its face to plaintiff's claim of negligence, but finding relevance demonstrated where plaintiff explained records would show defendant knew home abusive prior to placing child).

**IV.    Conclusion**

Accordingly,  IT IS HEREBY **ORDERED** that the Motion is **DENIED**.